BIRCH SHIPPING CORPORATION,
Plaintiff,

v.

The EMBASSY OF the UNITED
REPUBLIC OF TANZANIA,
Defendant.

Misc. No. 80–247.

United States District Court,
D. of Columbia.

Nov. 18, 1980.

Paul D. Coleman, Washington, D. C., for plaintiff.

William L. Farrar, Jr., Schweitzer, Hirschmann & Farrar, Washington, D. C., for defendant.

## MEMORANDUM

JOHN LEWIS SMITH, Jr., District Judge.

Plaintiff in this action is a shipowner attempting to execute a judgment against the defendant, the Embassy of the United Republic of Tanzania. The underlying dispute arises out of a contract for shipment of a load of corn, the purchase of which was financed by the United States Department of Agriculture, from New Orleans to Tanzania. The parties agreed to submit the dispute to arbitration and they also agreed that a court judgment could be entered upon any award rendered pursuant to the arbitration agreement. The dispute was, in fact, fully arbitrated in New York, resulting in a monetary award in favor of plaintiff. Plaintiff then petitioned the United States District Court for the Southern District of New York to confirm the arbitration award and enter judgment in favor of plaintiff, pursuant to Section 9 of the United States Arbitration Act, 9 U.S.C. § 9. That petition was granted August 21, 1980, in the amount of $89,168.56, although defendant did not enter an appearance. In accordance with the provisions of 28 U.S.C. § 1963, that judgment was then registered in this Court. A writ of garnishment was obtained and served upon American Security Bank, where defendant maintains a checking account. Defendant subsequently moved to quash the writ, which is the motion presently before the Court.

Defendant argues that under the terms of the Foreign Sovereign Immunities Act (the Act), 28 U.S.C. §§ 1602–1611, its property is immune from this attachment, 28 U.S.C. § 1609, and that it is not within any of the exemptions to Section 1609 set forth in Section 1610, 28 U.S.C. § 1610. Plaintiff responds that the account is, on the contrary, within an exemption specified in Section 1610(a), which provides, in part:

(a) The property in the United States of a foreign state, as defined in section 1603(a) of this chapter, used for a commercial activity in the United States, shall not be immune from attachment in aid of execution, or from execution, upon a judgment entered by a court of the United States or of a State after the effective date of this Act, if—

(1) the foreign state has waived its immunity from attachment in aid of execution or from execution either explicitly or by implication, notwithstanding any withdrawal of the waiver the foreign state may purport to effect except in accordance with the terms of the waiver...

The statute thus sets forth a two-step analysis relevant here for determining immunity: the foreign state must have waived its immunity, and the property attached must be used for a commercial purpose.

■ As to immunity, defendant agreed to arbitration and to judicial enforcement of any award: "We further agree that we will faithfully observe this Agreement and the Rules and that we will abide by and perform any Award rendered pursuant to this Agreement and that a judgment of the Court having jurisdiction may be entered upon the Award." Parties' Submission to Arbitration, at 3. This is, at minimum, an implicit waiver of the immunity defendant seeks to assert here. While an agreement to entry of judgment reinforces any waiver, an agreement to arbitrate, standing alone, is sufficient to implicitly waive immunity, as was recognized by Congress, H.Rep.No. 94–1487, 94th Cong., 2d Sess., *reprinted in* [1976] U.S.Code Cong. & Ad.News 6604 at 6617, 6627; *see Ipitrade International, S.A. v. Federal Republic of Nigeria*, 465 F.Supp. 824, 826 (D.D.C.1978). That waiver cannot now be unilaterally withdrawn. 28 U.S.C. § 1610(a).

■ It is also apparent, by defendant's own account, that the property plaintiff seeks to attach, a checking account of the Embassy, is "used for a commercial activity," as Section 1610 requires. An affidavit submitted by defendant states, in relevant part:

3. The funds in the aforementioned account are solely for the purpose of the maintenace [sic] and support of the Embassy and its personnel. The funds in said account are used *to pay the salaries of the staff, pay for incidental purchases and services necessary and incident to the operation* of the Embassy in its diplomatic activity as the official representative of the government of the United Republic of Tanzania in the United States of America.

4. The funds in the aforementioned account are *not used for any form of commercial activity other than the aforementioned incidental purchases of goods and services necessary and incident to the operation of the Embassy...* (Emphasis added).

The legislative history makes clear that activity of this type is within the statutory definition of "commercial activity" set forth in 28 U.S.C. § 1603(d):

As the definition indicates, the fact that goods or services to be procured through a contract are to be used for a public purpose is irrelevant; it is the essentially commercial nature of an activity or transaction that is critical. Thus, a contract by a foreign government to buy provisions or equipment for its armed forces or to construct a government building constitutes a commercial activity. The same would be true of a contract to make repairs on an embassy building. Such contracts should be considered to be commercial contracts, even if their ultimate object is to further a public function.

.    .    .    .    .

Also public or government and not commercial in nature, would be the employment of diplomatic, civil service, or military personnel, *but not the employment of American citizens or third country nationals by the foreign state in the United States.*

The courts would have a great deal of latitude in determining what is a "com-

mercial activity" for purposes of this bill .... Activities such as a foreign government's sale of a service or a product, *its leasing of property*, its borrowing of money, *its employment or engagement of laborers, clerical staff or public relations or marketing agents*, or its investment in a security of an American corporation, would be among those included within the definition. (Emphasis added). H.Rep.No.94–1487, *supra* at 6615.

The only significant question, then, is whether it is proper to attach an account which is not used *solely* for commercial activity. Certainly the statute places no such restriction upon property which may be attached, nor is there anything in the legislative history indicating that Congress contemplated such a limitation. Central bank accounts are exempt, but that exception is not applicable to accounts used for mixed purposes. *See* H.Rep.No.94–1487, *supra* at 6630. Indeed, a reading of the Act which exempted mixed accounts would create a loophole, for any property could be made immune by using it, at one time or another, for some minor public purpose. Defendant asserts, however, that failure to find this property immune will make it impossible for foreign countries to maintain embassies. Even if it could be shown this was actually a problem, the solution would not be the broad immunity defendant asks, but segregation of public purpose funds from commercial activity funds. Holding otherwise would defeat the express intention of Congress to provide, in cases of commercial litigation such as this, that a "judgment creditor [would have] some remedy if, after a reasonable period, a foreign state or its enterprise failed to satisfy a final judgment." H.Rep.No.94–1487, *supra* at 6606. Accordingly, the property at issue here is not immune from attachment, and the motion to quash the writ is denied.